RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TIMOTHY MOON,

        *Plaintiff-Appellant,*

    *v.*

HARRISON PIPING SUPPLY; MICHIGAN TOOLING
ASSOCIATION WORKERS COMPENSATION FUND;
ASIT K. RAY; MICHIGAN TOOLING ASSOCIATION
SERVICE COMPANY,

        *Defendants-Appellees.*

No. 05-1808

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-71882—Paul D. Borman, District Judge.

Argued: June 8, 2006

Decided and Filed: September 28, 2006

Before: MOORE, COLE, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Marshall D. Lasser, LAW OFFICE OF MARSHALL LASSER, Southfield, Michigan, for Appellant. Thomas J. Laginess, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, Hal O. Carroll, VANDEVEER GARZIA, P.C., Troy, Michigan, Dale A. Robinson, RUTLEDGE MANION RABAUT TERRY & THOMAS P.C., Detroit, Michigan, for Appellees. **ON BRIEF:** Marshall D. Lasser, LAW OFFICE OF MARSHALL LASSER, Southfield, Michigan, for Appellant. Thomas J. Laginess, Ronald Acho, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, Hal O. Carroll, VANDEVEER GARZIA, P.C., Troy, Michigan, Dale A. Robinson, RUTLEDGE MANION RABAUT TERRY & THOMAS P.C., Detroit, Michigan, C.F. Boyle, Jr., LAW OFFICE OF C.F. BOYLE, JR., Chicago, Illinois, for Appellees.

       COLE, J., delivered the opinion of the court, in which CLAY, J., joined. MOORE, J. (pp. 9-10), delivered a separate concurring opinion.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. Timothy Moon filed suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, as well as state tort law, alleging that his employer colluded with an insurance provider, an insurance adjuster, and a physician, to deny him workers' compensation benefits. The district court dismissed Moon's suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, because the suit was "reverse-preempted" under the McCarran-Ferguson Act, 15 U.S.C. § 1012(b). Because Moon failed sufficiently to allege a pattern of racketeering activity for purposes of RICO, we **AFFIRM** the district court's judgment with respect to Moon's RICO claim. However, because deciding Moon's state-law claim was unnecessary, we **REVERSE** the district court's exercise of pendent jurisdiction, and **REMAND** with instructions to dismiss those claims without prejudice.

## I. BACKGROUND

According to his First Amended Complaint (the "Complaint"), Timothy Moon was an employee of Harrison Piping Supply ("Harrison"), who was injured at work on October 23, 2000. Although he initially received workers' compensation benefits, Moon alleges that Harrison colluded with the Michigan Tooling Association Workers' Compensation Fund (the "Fund"), the Michigan Tooling Association Service Company (the "Service Company"), and Dr. Asit Ray to terminate those benefits. Moon named as defendants: (1) Harrison, his employer; (2) the Fund, which is Harrison's insurer; (3) the Service Company, which was the Fund's adjuster; and (4) Ray, an independent physician.

Moon alleges that the Defendants collectively formed an "enterprise" for purposes of RICO and engaged in a pattern of racketeering in the form of mail fraud and witness-tampering. Specifically, Moon claims that the Fund sent him a Notice of Dispute (the "Notice") via United States mail on July 24, 2003, which stated that Moon was capable of fully resuming his job responsibilities even though Defendants knew that examining doctors had determined that Moon was still disabled. The Notice terminated Moon's benefits.

After receiving the Notice, Moon brought a workers' compensation claim before the Michigan Workers' Disability Compensation Bureau (the "Bureau"). According to Moon, the Defendants reinstated his benefits on the eve of his hearing before the Bureau. On the same day, March 25, 2004, the Fund and the Service Company sent notice to Moon that he was to be examined by Dr. Ray. According to Moon, the other Defendants gave Dr. Ray express or tacit instructions to issue a "cut-off" report, i.e., a medical report that could form the basis for terminating Moon's benefits. Dr. Ray, who Moon claims has a reputation for rendering medical opinions supporting rejection of claimants' benefits, examined Moon on April 8, 2004, and issued an allegedly fraudulent report opining that Moon was no longer disabled. The report was mailed to various persons and entities, including the Bureau. Finally, on April 16, 2004, the Fund mailed a second Notice of Dispute (the "Second Notice"), which, according to Moon, falsely claimed that he was no longer disabled.[1]

Moon filed a RICO claim in district court, as well as a claim for intentional infliction of emotional distress ("IIED") under Michigan common law. The Defendants filed a motion to dismiss

---

[1] In support of his witness-tampering claim, Moon states only that "Defendants' actions violated 18 U.S.C. § 1512." He adds that "[t]his allegation is based in part on information and belief, and are [sic] likely to have evidentiary support after reasonable opportunity for investigation and discovery."

for, inter alia, failure to state a claim upon which relief could be granted under Rule 12(b)(6). The district court granted the Defendants' motion in an Amended Opinion and Order, dismissing with prejudice Moon's RICO and IIED claims. This timely appeal followed.

## II. STANDARD OF REVIEW

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), we "treat[] all well-pleaded allegations in the complaint as true." *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). "Dismissal is proper only 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle [him] to relief.'" *Id.* (quoting *Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998)). Moreover, we construe the complaint in the light most favorable to the non-moving party. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). A complaint will survive a motion to dismiss if it "contain[s] either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting, Inc.*, 163 F.3d at 369; *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (Rule 12(b)(6) dismissal improper unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). We review a district court's Rule 12(b)(6) dismissal de novo. *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999).

## III. DISCUSSION

### A.      Moon's RICO Claims

Moon asserts a claim under RICO, a federal statute that affords a civil remedy to an individual who is injured by virtue of certain types of unlawful activity. RICO provides in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Thus, to state a RICO claim, Moon must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Because we conclude that the Complaint lacks facts establishing a "pattern of racketeering activity," and thus fails to state a RICO claim, we do not address any of the other RICO elements.

#### 1.      *Moon Has Failed To Allege Adequately A "Pattern Of Racketeering Activity"*

##### (a)      *Predicate Acts*

To establish a RICO violation under §1962(c), a plaintiff must allege that the RICO enterprise engaged in a "pattern of racketeering activity" consisting of at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343). 18 U.S.C. § 1961(1).

Here, the district court concluded that Moon pleaded five predicate acts of racketeering activity with the requisite particularity. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (consistent with Rule 9(b), RICO plaintiffs must allege "the time, place and contents of the misrepresentations"). These alleged acts include: (1) the Fund's July 24, 2003 mailing to Moon of

the Notice terminating his benefits on the fraudulent grounds that Moon was capable of resuming his job responsibilities; (2) the Fund's March 25, 2004 mailing of a Notice of Examination to be performed by Dr. Ray, which examination was part of Defendants' scheme to fraudulently deprive Moon of his benefits; (3) Dr. Ray's mailing, between April 8, 2004 and April 26, 2004, of his medical report, which fraudulently opined that Moon was no longer disabled; (4) Defendants' agent's (attorney Felker) April 26, 2004 mailing of Dr. Ray's fraudulent medical report to Moon's counsel; and (5) the Fund's April 16, 2004 mailing to Moon of the Second Notice terminating Moon's benefits, which again fraudulently stated that Moon was not disabled.

The district court correctly concluded that Moon adequately pleaded a minimum of two predicate acts.[2] Although necessary to sustain a RICO claim, the pleading of two predicate acts may not be sufficient because § 1961(5) "assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved." *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 238 (1989). In *H.J.*, the Supreme Court held that "the term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity. It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* at 239 (internal citations omitted). "Continuity and relationship constitute two analytically distinct prongs of the pattern requirement." *Vild v. Visconsi*, 956 F.2d 560, 566 (6th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992).

### (b)     Relatedness

Moon has satisfied the "relatedness" requirement because he has alleged predicate acts that have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.*, 492 U.S. at 240. The predicate acts pleaded in the Complaint had the same purpose of depriving Moon of his benefits, the same result in that Moon periodically lost his benefits, the same participants in Harrison and the Fund, the same victim in Moon, and the same method of commission in mail fraud.

### (c)     Continuity

In addition to "relatedness," the predicate acts pleaded must have sufficient "continuity." "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Whether a pattern of racketeering activity satisfies the continuity requirement depends on the particular facts of each case. *Id.* at 242. Continuity may be established at the pleading stage by alleging facts of either closed- or open-ended racketeering activity.

A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. Here, the predicate acts set forth in the Complaint cover a nine-month period (from July 2003 to April 2004). Although there are no rigid rules regarding what amounts to "a substantial period of time," racketeering activity lasting only "a few weeks or months and threatening no future criminal conduct" is insufficient. *Id.* at 242; *see also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994), *cert. denied*, 513 U.S. 1017 (1994) (predicate acts over 17 months did not satisfy the closed period analysis); *Vild*, 956 F.2d at 569 (predicate acts over six or seven months not sufficient under closed-period analysis).

---

[2]We do not reach the issue, decided by the district court, of whether a RICO plaintiff must plead at least two predicate acts against *each* defendant alleged to have participated in a racketeering enterprise. Since the parties do not challenge this portion of the district court's order, and since we hold that Moon's RICO pleading fails on other grounds, we decline to express an opinion on this subject.

Moon argues that the district court erred by failing to consider the allegations in his Second Amended Complaint when it concluded that he failed to allege a closed period of racketeering activity. The Second Amended Complaint is virtually identical to the Complaint (i.e., the First Amended Complaint) except that the former pleads that Moon's benefits were first unlawfully terminated in September 2001 and that this constituted the first predicate act in the Defendants' racketeering scheme. Had the district court taken into account the additional facts pleaded in his Second Amended Complaint, contends Moon, the pattern of racketeering would have extended for two-and-a-half years, rather than nine months, and therefore would have satisfied the closed period requirement.

Moon is mistaken. The Second Amended Complaint was not properly before the district court, nor is it before this Court. The magistrate judge granted Moon's motion to file a Second Amended Complaint subject to the district judge denying the motions to dismiss, which the district judge did not do. Moon did not appeal the order of the magistrate judge to the district judge. Even though Moon's notice of appeal to this Court includes the magistrate judge's order, this Court lacks jurisdiction to review that order where the magistrate judge did not have plenary jurisdiction over Moon's case (the district judge merely referred to the magistrate judge Moon's motion for leave to file his Second Amended Complaint) and Moon failed to seek review before the district judge first.[3] *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 471 (6th Cir. 2006) (declining to entertain appeal of magistrate judge's order denying a motion for a default judgment where the magistrate did not exercise plenary jurisdiction and the appellant did not appeal to the district judge).

In any event, even if the racketeering activity lasted for two-and-a-half years, as Moon insists, facts establishing a closed period of continuity are still lacking. Moon has pleaded that the Defendants embarked upon a coordinated scheme to wrongfully terminate his workers' compensation benefits. All of the predicate acts—the mailing of the Notice and Second Notice cutting off his benefits and the mailing of Dr. Ray's fraudulent medical report—were keyed to Defendants' single objective of depriving Moon of his benefits. No other schemes, purposes, or injuries are alleged, and there are no facts suggesting that the scheme would continue beyond the Defendants accomplishing their goal of terminating Moon's benefits. In circumstances such as these, the purported racketeering activity does not bear the markings of the "long-term criminal conduct" about which "Congress was concerned" when it enacted RICO. *H.J., Inc.*, 492 U.S. at 242.

This Court's prior decisions compel the conclusion that Moon has not pleaded a closed-ended period of continuity. For instance, in *Vemco*, the parties entered into a contract under which the defendant agreed to build a "paint finishing system" in the new facility of the plaintiff car-parts manufacturer. *Id.* at 131. Displeased with the defendant's repeated demands for payment beyond that specified in the contract and defendant's performance under the contract, the plaintiff brought suit alleging predicate acts of fraud and extortion under RICO. *Id.* at 131-32. This Court held that a single scheme emanating from a dispute over an ordinary construction contract did not possess the requisite RICO continuity:

> Vemco has alleged a single fraudulent scheme by Flakt to misrepresent a guaranteed price in a building contract, and later to extort a higher price from Vemco. The total scheme, from the time of contract negotiations until the last threat alleged, lasted only seventeen months. The goal of the 'single criminal episode,' as the district court accurately characterized it, was to get Vemco to pay the cost of *one* paint

---

[3] 28 U.S.C. § 636(c)(1) provides that "[u]pon the consent of the parties, a . . . magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court . . . ." Orders from magistrate judges who exercise plenary jurisdiction over a case are directly appealable to this Court. *See In re Bell & Beckwith*, 838 F.2d 844, 848 n.5 (6th Cir. 1988).

> system. [¶] There are no facts pleaded suggesting anything but that once Flakt received the money it was requesting in the billing statements, its scheme would be over, and it would end its association with Vemco.

*Vemco*, 23 F.3d at 134-35.

Similarly, in *Thompson v. Paasche*, 950 F.2d 306 (6th Cir. 1991), the plaintiff landowners asserted RICO claims against the defendant seller on the grounds that the seller fraudulently represented that the purpose of his reservation of oil and gas rights as part of the terms of the sales was to ensure that the land remained unspoiled. *Id.* at 309. In fact, claimed the plaintiffs, the seller had arranged to lease the oil and gas rights to a third party who would undertake drilling. *Id.* at 309-10. This Court reversed the RICO verdict for the plaintiffs, concluding that the alleged RICO scheme ended once the defendant had sold all of his lots to the plaintiffs, and therefore it was "insufficiently protracted to qualify as a RICO violation." *Id.* at 311; *see also Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 19 (1st Cir. 2000), *cert. denied*, 532 U.S. 905 (2001) (where the plaintiff alleged a pattern of racketeering acts focused on coercing him into relinquishing his ownership interest in a real estate development project, the court characterized the alleged racketeering activities as "finite in nature" and occurring over a "relatively modest period of time," thus foreclosing a finding of closed-period continuity); *Edmondson & Gallagher v. Alban Towers Tenants Assoc.*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) ("We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim.").

As in the foregoing cases, Moon's allegations center around a single RICO scheme with a single object stemming from a dispute about whether Moon is impaired by a workplace disability entitling him to benefits. Even assuming a period of two-and-a-half years of racketeering activity, these allegations do not give rise to closed-ended continuity.

Moon's allegations also do not give rise to a finding of open-ended continuity. This inquiry turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projecting into the future. In *H.J.*, the Supreme Court held that open-ended continuity could be pleaded through facts showing "a distinct threat of long-term racketeering activity," or by showing "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J., Inc.*, 492 U.S. at 242.

Here, Moon argues that open-ended continuity exists because there is nothing to stop the Defendants from persisting in their cycle of fraudulently terminating his benefits, restoring them, and then fraudulently terminating them again. The district court was not persuaded, finding that there is no risk of ongoing racketeering activity where Moon petitioned the Bureau for a resolution of his dispute with Defendants. We agree. A final decision of the Bureau (once all appellate options have been exhausted) is binding on the parties and, if favorable to Moon, would prevent the Defendants from withdrawing benefits in the absence of further action by the Bureau. *See* Mich. Comp. Laws Serv. §§ 418.847 & 418.851 (2006). In other words, the Defendants could no longer suspend Moon's benefits through issuing Notices of Dispute, but would instead have to file a petition with the Bureau to stop their payments to Moon and prove that he is no longer entitled to them. Mich. Admin. Code R. 408.40 (2006).

We do not hold that a RICO action for fraudulent termination of workers' compensation benefits could never occur alongside a state administrative proceeding before the Bureau, but merely

that under the fact-specific continuity inquiry, Moon has not alleged facts sufficient to establish a pattern of racketeering activity.[4]

Finally, Moon has not pleaded any allegations to the effect that the fraudulent termination of workers' compensation benefits is Defendants' "regular way of doing business." *H.J., Inc.*, 492 U.S. at 242; *see also Vild*, 956 F.2d at 569 (plaintiff who asserted RICO violations stemming from fraudulent representations and extortion in connection with a marketing agreement did not allege facts demonstrating that the "conduct directed toward him is a normal way of doing business for defendants"). True, Moon pleads that "Dr. Ray was known to defendants, through their attorney Thaddeus Felker, as a doctor who could be relied upon to write 'cut off' reports in workers compensation cases; defendants and/or their attorney had relied upon him in the past to issue 'cut off' reports." Moon also pleads that "[o]n information and belief, one or more members of the enterprise engaged in similar acts to defraud other persons of their workers' compensation benefits." These allegations do not reasonably support the notion that the alleged fraud of which Moon complains is Defendants' *regular* way of doing business. "Regular" means "usual; normal; customary." *Random House Unabridged Dictionary* 1624 (2d ed. 1993). Moon's allegations regarding open-ended continuity amount to the following: (1) Moon—the only plaintiff in this case—was denied workers' compensation benefits as a result of Defendants' scheme to use Dr. Ray to fraudulently deny benefits; (2) Defendants had used Dr. Ray for this purpose in the past; and (3) at some point, Defendants treated some other people similarly to Moon. Moon does not allege the sort of longstanding relationship that would give rise to a threat of continued racketeering activity. Drawing all reasonable inferences in Moon's favor may lead us to conclude that several instances of similar conduct have occurred, but they do not support a systematic threat of ongoing fraud. In short, the leap from Moon's allegations to the conclusion that Defendants customarily bilked employees out of workers' compensation benefits is too great, even drawing all reasonable inferences in favor of Moon.

For the reasons described above, we **AFFIRM** the district court's judgment dismissing Moon's RICO claims under Rule 12(b)(6).

### B.      Moon's IIED Claim

Having dismissed Moon's RICO claim, the district court proceeded to analyze whether Moon stated a claim for intentional infliction of emotional distress under Michigan common law. We review a district court's decision to exercise pendent jurisdiction for abuse of discretion, *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1983), meaning that this Court will not reverse unless the district court "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006) (internal citation omitted).

As the district court recognized, a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996); *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987); *Landefeld*, 994 F.2d at 1182. Residual jurisdiction should be exercised only in cases where the "interests of judicial economy and the avoidance of multiplicity of litigation" outweigh our concern over "needlessly deciding state law

---

[4] Although it is not germane to our disposition of Moon's appeal, the magistrate judge that presided over Moon's Bureau petition issued an opinion granting Moon a closed award of benefits entitling him to compensation only for the period of Oct. 24, 2000 through April 7, 2004. On April 24, 2006, during the pendency of this appeal, Michigan's Workers' Compensation Appellate Commission affirmed the magistrate judge's decision.

issues." *Landefeld*, 994 F.2d at 1182 (quoting *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)).

Contrary to the analysis of the district court, this is not such a case. Moon's IIED claim has no bearing on his RICO claim. Moreover, although we decline to address whether Moon's RICO claim is precluded by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), we disagree with the district court that resolution of Moon's IIED claim is necessary to resolve that issue. Meanwhile, Moon's IIED claim implicates complex aspects of Michigan law. Michigan courts of appeal have handled such claims differently over the years, *compare Broadus v. Ferndale Fastener Div.*, 269 N.W.2d 689, 693 (Mich. Ct. App. 1978), *with Lisecki v. Taco Bell Rests., Inc.*, 389 N.W.2d 173, 176 (Mich. Ct. App. 1986), and the Michigan Supreme Court has never formally recognized IIED as a cause of action. *See Roberts v. Auto Owners, Inc.*, 374 N.W.2d 905, 913 (Mich. 1985) (Williams, C.J., concurring). Moon's is clearly the ordinary case, where the exercise of pendent jurisdiction is improper.

## IV. CONCLUSION

For the reasons described above, we **AFFIRM** the district court's dismissal of Moon's RICO claim for failure to state a claim upon which relief can be granted under Rule 12(b)(6). We **REVERSE** the district court's dismissal of Moon's claim for intentional infliction of emotional distress, and **REMAND** with instructions to dismiss that claim without prejudice.

---
**CONCURRENCE**
---

KAREN NELSON MOORE, Circuit Judge, concurring. The Supreme Court has indicated two ways a RICO plaintiff may prove (or, as is the case here, allege) a "pattern of racketeering activity" by showing open-ended continuity. First, "[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). Alternatively, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* I wholly agree with the majority's analysis of the "regular way of doing business" method of alleging open-ended continuity. Further, I agree with the majority that Moon fails to allege a "distinct threat of long-term racketeering activity." However, I offer different reasons for this conclusion.

As an initial matter, in determining whether Moon has alleged a threat of long-term racketeering activity, I do not believe we should consider events that transpired after the alleged racketeering acts ended. In *United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991), we noted that "the threat of continuity must be viewed at the time the racketeering activity occurred." *Id*. at 238. *See also Blue Cross & Blue Shield of Mich. v. Kamin*, 876 F.2d 543, 545 (6th Cir. 1989) (concluding that racketeering activity was open-ended because "if he had not been caught, there is no reason to believe [the defendant] would not still be submitting false claims"). Thus, the question we must answer is whether Moon has pleaded sufficient facts to conclude that, on the date of the last alleged racketeering act, there was a distinct threat of long-term racketeering activity.

Moon's First Amended Complaint alleges the following:

- Moon's benefits were terminated on July 24, 2003, J.A. at 10 (First Am. Compl. ¶ 9c);

- On March 25, 2004, his benefits were reinstated, J.A. at 11 (First Am. Compl. ¶ 9e);

- That same day, the Fund and the Service Company sent him a notice of examination, requiring him to be examined by Dr. Ray, J.A. at 11 ((First Am. Compl. ¶ 9f);

- The defendants previously had relied on Dr. Ray to write cut-off reports, *id.*;[1]

- On April 8, 2004, Dr. Ray examined Moon and wrote (and subsequently mailed) a fraudulent report concluding that Moon was not disabled, *id.*;

- On April 16, 2004, an employee of the Fund mailed Moon a notice of dispute claiming that he had no work-related disability, J.A. at 12 (First Am. Compl. ¶ 10).

Although nothing in these allegations indicates that, as of April 2004, the alleged racketeering activity would immediately cease, nothing indicates the type of "distinct threat of long-term racketeering activity" the Supreme Court referred to in *H.J.* In explaining what might constitute such a distinct threat, the Supreme Court offered the example of a thug's extorting money

---

[1]Moon offers no direct allegation, however, that these prior reports were necessarily fraudulent.

from storekeepers and "telling his victims he would be reappearing each month to collect" additional payments. *H.J.*, 492 U.S. at 242. This example led us to state that a plaintiff seeking to prove open-ended continuity in this manner must show acts that "*by their nature* 'involve a distinct threat of long-term racketeering activity.'" *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992) (emphasis added). *See also id.* ("Similarly, the plaintiff cannot fulfill the open-ended formulations of the continuity test because he has not alleged facts which, by their nature, demonstrate only a threat of indefinite improper activity . . . ."). Because the nature of the acts Moon alleges does not indicate a distinct threat of long-term racketeering activity, his First Amended Complaint does not sufficiently allege a RICO "pattern."

For these reasons, I respectfully concur.