In the Matter of John C.
MENTAG, Debtor.

John C. Mentag, Plaintiff/Appellant,

v.

GMAC Mortgage LLC,
Defendant/Appellee.

In the Matter of John C.
Mentag, Debtor.

Nos. 09–15012, 09–67842.

United States District Court,
E.D. Michigan,
Southern Division.

June 17, 2010.

John Menntag, Pro se.

Brett A. Border, Farmington Hills, MI, for GMAC Mortgage, LLC.

Charles L. McKelvie, Birmingham, MI, for Chrysler Financial Services Americas LLC.

John William Nemecek, Southfield, MI, for Stuart A. Gold.

## OPINION AND ORDER

VICTORIA A. ROBERTS, District Judge.

### I. INTRODUCTION

This is a bankruptcy appeal in a Chapter 7 case. *Pro se* Debtor/Appellant John C. Mentag ("Mentag") appeals from Orders of the Bankruptcy Court granting Creditor/Appellee GMAC Mortgage LLC's ("GMAC LLC") motion to lift the automatic stay and denying his motion for reconsideration. *See* Dkt # 1. Mentag also moves the Court to compel GMAC LLC to present documents and cease foreclosure actions. GMAC LLC moves to dismiss the appeal for lack of subject matter jurisdiction and failure to state a claim. The issue is whether GMAC LLC was the proper party to bring the motion to lift the stay.

For the reasons stated, the Court finds the record before the Bankruptcy Court is unclear on this question. The Court **DENIES** GMAC LLC's Motion to Dismiss Appeal and **DENIES** Mentag's Motion to Compel. The Court **REVERSES** the Bankruptcy Order granting the motion to lift the automatic stay and **REMANDS** for further proceedings consistent with this Order.

### II. FACTUAL BACKGROUND

According to Mentag, in 1980 he purchased a 1,200 square foot home located at 18231 Beverly Road in Beverly Hills, Michigan. Over the years, he expanded the home to 5,514 square feet. He resides there with his wife and five children.

On December 1, 2004, Mentag and his wife executed a mortgage in favor of GMAC Mortgage Corporation ("GMAC Corp.") in the amount of $512,000; Mortgage Electronic Registration Systems, Inc. ("MERS") was mortgagee, acting as nominee for GMAC Corp. *See* Record on Ap-

peal, No. 9, Exh. 1. The mortgage was recorded with the Oakland County Register of Deeds on February 11, 2005 under Liber Number 34988, page 625. *Id.* Also on December 1, 2004, Mentag executed an "Adjustable Rate Note" in favor of GMAC Corp. in the amount of $512,000. *Id.* at Exh. 2.

It appears that GMAC Corp. may have sold Mentag's note and mortgage. Under a "Pooling and Servicing Agreement" ("Agreement") dated February 24, 2005, between Residential Asset Mortgage Products, Inc. ("RAMP") as Company; GMAC Corp. as Servicer; and JPMorgan Chase Bank, NA ("Chase") as Trustee, RAMP assigned to Chase for the benefit of certain unknown investors, all rights, title and interest in multiple mortgage loans. *Id.* at Exh. 4, p. 45. The 137–page Agreement required that each assigned mortgage loan be endorsed without recourse in blank, or in the name of Trustee as trustee, and signed by an authorized officer of GMAC Corp. *Id.* Under the Agreement, GMAC Corp. is defined as seller of the mortgage loans to RAMP. *Id.* GMAC Corp. also agreed to service the loans in accordance with the terms of the respective mortgage loans. *Id.*

Less than four years after executing the mortgage and note, Mentag experienced financial difficulty; he last made a mortgage payment in November 2008, covering a payment due for August or September 2008. A foreclosure sale was scheduled for September 8, 2009. Mentag presumably filed this action to stave off foreclosure of the home he owned for nearly 30 years.

## III. PROCEDURAL BACKGROUND

On September 8, 2009, Mentag filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. The petition lists GMAC LLC as holder of a 1st secured interest and GMAC Mortgage as holder of a 2nd secured interest in Mentag's Beverly Hills, Michigan residence. Mentag listed an estimated value of $400,000.00 and a total indebtedness of $556,335.47 on the first loan and $94,701.00 on the second loan.

On September 17, 2009, GMAC LLC, as servicer for MERS, filed a Motion for Relief from the Automatic Stay and to Waive the Provisions of F.R.B.P.4001(a)(3). *See* Record on Appeal, No. 1. GMAC LLC alleged that it was the holder of a mortgage on the above property, and that Mentag defaulted on payments due under the terms of a note secured by that mortgage; a copy of the mortgage was attached to the Motion. *Id.*

On October 15, 2009, Judge Walter Shapero conducted a hearing on GMAC's motion. At that hearing, Mentag questioned whether GMAC LLC was the holder of the note and mortgage, and whether it was the proper party to pursue relief. *See* Record on Appeal, No. 4, p. 6. Mentag also questioned whether GMAC LLC adequately proved that Mentag had no equity in the property. *Id.* at pp. 4, 6. GMAC LLC's counsel did not have the note, but represented that a servicing agreement between GMAC LLC and MERS permitted GMAC LLC to pursue the motion to lift the stay. *Id.* at pp. 9–10. Judge Shapero scheduled an evidentiary hearing, stating that "the only additional requirement for standing is the servicing agreement and the note." *Id.* at p. 11.

On December 2, 2009, Judge Shapero held an evidentiary hearing. Mentag submitted three exhibits, which the court entered into evidence: (1) Exhibit A—a map that identified comparable properties sold within the previous 12 months; (2) Exhibit B—listings of comparable properties; and (3) Exhibit C—county records and photos evidencing the subject property. *See* Rec-

ord on Appeal, No. 8. GMAC LLC also submitted four exhibits, which the court entered into evidence: (1) Exhibit 1—the mortgage; (2) Exhibit 2—the note; (3) Exhibit 3—the Oakland County state equalized valuation for the subject property; and (4) Exhibit 4—the Agreement. *See* Record on Appeal, No. 9.

At the hearing, Mentag again disputed GMAC LLC's standing to pursue the motion for relief, primarily because GMAC LLC did not provide an original copy of the note. Judge Shapero overruled Mentag's objection to the admission of a copy of the note. *See* Record on Appeal, No. 5, pp. 7–17. GMAC LLC's legal counsel argued that the contractual obligation was evident on the face of the mortgage and provided GMAC sufficient constitutional standing to bring the motion for relief. *Id.* at p. 8. He also represented that the servicing agreement authorized MERS, on behalf of GMAC, to collect and service many mortgage notes and mortgages. *Id.* at p. 12. Judge Shapero decided that standing was no longer at issue. *Id.* at p. 17.

On the issue of valuation, GMAC LLC argued the fair market value of the property was $405,405.00, based on the state equalized value ("SEV") provided in Exhibits 3 and C. *Id.* at p. 18. GMAC LLC also said Mentag owed a balance of $512,699.90 on the note and had an arrearage of $64,179.38 for missed payments, escrow advances for taxes and insurance, late fees, penalties and attorney fees. *Id.* at 18–19. Thus, GMAC LLC said it was not adequately protected because Mentag had little to no equity. *Id.* at 41. Mentag said the property was valued at between $550,000 and $575,000. *Id.* at 25. Judge Shapero took the matter under advisement.

On December 7, 2009, Judge Shapero entered an Opinion granting relief from the automatic stay. *See* Record on Appeal, No. 6. Although Judge Shapero agreed that SEV was not particularly credible evidence of value in light of the current market conditions, he noted that even at Mentag's value figure, Mentag would have little or no equity in the property after sales commission, taxes and other closing fees were paid. *Id.* at p. 2. Additionally, Judge Shapero found that no adequate protection, such as proffered monthly payments, were made. *Id.*

On December 8, 2009, Judge Shapero entered an Order granting relief from the automatic stay and waiving the provisions of Fed. R. Bankr.P. 4001(a)(3) as to GMAC LLC as servicer for MERS. The Order was to become effective 30 days after entry.

On December 9, 2009, Mentag filed a document which stated that Judge Shapero received incomplete and inaccurate information at the evidentiary hearing. The Bankruptcy Court apparently construed that document as a motion for rehearing. On December 15, 2009, Judge Shapero entered an Order Denying What the Court Construes as a Request for Rehearing. On December 24, 2009, Mentag filed a Notice of Appeal. On February 2, 2010, GMAC LLC filed its Motion to Dismiss Appeal Pursuant to Fed.R.Civ.P. 12(b).

## IV. STANDARD OF REVIEW

### A. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Bankr.P. 7012(b) (incorporating Fed.R.Civ.P. 12(b)). Under Rule 12(b)(1):

[a] motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the

factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists.

*DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004).

Likewise, Rule 12(b)(6) provides that a party may assert the defense of "failure to state a claim upon which relief may be granted" by motion:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> . . .
>
> (6) failure to state a claim upon which relief can be granted

Fed.R.Civ.P. 12(b)(6).

In deciding such a motion, the court "must 'construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief.'" *Power & Tel. Supply Co. v. SunTrust Banks, Inc.* 447 F.3d 923, 929–30 (6th Cir.2006) (quoting *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360 (6th Cir.2001)). "A complaint will survive a motion to dismiss if it contains either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Moon v. Harrison Piping Supply,* 465 F.3d 719, 2006 WL 2772763 at *2 (6th Cir. Sept.28, 2006) (internal citations and quotations omitted). The court need not accept legal conclusions or unwarranted factual inferences as true. *Power & Tel. Supply Co.,* 447 F.3d at 930.

**B. Bankruptcy Appeals**

■ District courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges.

*See* 28 U.S.C. § 158(a)(1). The District Court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. See *In re Holland,* 151 F.3d 547, 548 (6th Cir.1998); Bankruptcy Rule 8013 ("[the bankruptcy court's] [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous").

## V. ANALYSIS

### A. Jurisdiction

GMAC LLC argues that this Court lacks jurisdiction to hear this appeal because it was prematurely filed, and that Mentag is now jurisdictionally barred from bringing an appeal. GMAC LLC says that although the order lifting the automatic stay was filed on December 8, 2009, it did not become final for 30 days, until January 7, 2010. It says Mentag had from that date until January 21, 2010 to properly appeal to this Court. GMAC LLC argues that since Mentag enjoyed the automatic stay during the 30 day period, he could not appeal the bankruptcy decision until the stay expired. Additionally, GMAC LLC says it is unclear exactly what Mentag is appealing and his incoherent pleadings must be dismissed.

Mentag's inartfully drafted Notice of Appeal seeks review of "the judgment, order or decree of the bankruptcy judge denying motion to consider hearing for conflicting Exhibit information which materially affects the Court's decision in lift of stay order entered on the 8th day of December, 2009." The Notice additionally says that "under the Court rules, defendant (sic) requests review of this case and lift of stay order to consider December 15 as the date final action was taken by the Court affecting lift of stay ruling entered December 7 with a subsequent order entered December 8, 2009."

■ A reviewing court must liberally construe *pro se* pleadings, *Boag v. Mac-*

444

*Dougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (per curiam), and hold them to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Accordingly, the Court construes Mentag's Notice of Appeal as seeking review of both the Order denying the motion for rehearing and the underlying Order granting relief from the automatic stay.

■ A final order of the bankruptcy court may be appealed as of right pursuant to 11 U.S.C. § 158(a)(1). An order which grants or denies relief from an automatic stay in bankruptcy is a final order. *In re Sun Foods Co.,* 801 F.2d 186, 189 (6th Cir.1986). Likewise, an order denying a motion for reconsideration is a final order. *Wellman v. Salt Creek Valley Bank (In re Wellman ),* 337 B.R. 729, 2006 WL 189985 (6th Cir. BAP 2006) (unpublished table decision). Both orders, therefore, are final orders which this Court may review.

Like other orders issued from a bankruptcy court, an "order for relief" is treated as a judgment for purposes of the Bankruptcy Rules. Fed. R. Bank. P. 7054. Bankruptcy Rule 7054 makes applicable Rule 54 of the Federal Rules of Civil Procedure which under paragraph (a) provides: "Judgment" as used in these rules includes a decree and any order from which an appeal lies.

Bankruptcy Rules 5003 and 9021 establish that a judgment becomes effective when it is entered by the clerk in the docket. *Vaughan v. Meridian Nat'l Corp. (In re Ottawa River Steel Co.),* 331 B.R. 340, 343 (Bankr.N.D.Ohio 2005). Where the operative date for a specific term of a judgment is postponed, those rules operate as a baseline with respect to issues involving an attack solely on the underlying judgment. *Id.* at 345.

■ Federal Rule of Bankruptcy Procedure 8001 provides that a "notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr.P. 8001(a). The filing of a timely motion for reconsideration under Fed. R. Bank. P. 9023 (which is treated as a motion to alter or amend judgment under Fed. R.Civ.P. 59(e)) tolls the time for filing a notice of appeal, and the full 14–day period would begin to run from the entry of an order disposing of a timely motion for reconsideration. *Hann v. Michigan,* 2009 WL 2496666 at *3, 2009 U.S. Dist. LEXIS 127122 at *5 (E.D.Mich.2009) (citing *Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority,* 72 B.R. 619, 621–22 (E.D.Pa.1985)).

Here, according to the docket sheet, the bankruptcy clerk entered the Order granting the motion for relief from stay on December 9, 2009. The bankruptcy clerk entered the Order denying rehearing on December 15, 2009. The time to appeal began on that day. Mentag's Notice of Appeal, entered on December 28, 2009, was, therefore, timely. This Court has jurisdiction to consider the merits of the underlying judgment, as well as the Order denying motion to reconsider.

**B. Standing**

GMAC LLC contends that Mentag's assertion that it is not the proper party of interest or lacks standing to assert any rights, is meritless. Furthermore, GMAC LLC contends those arguments should be raised in the state court foreclosure proceedings. GMAC LLC says that Mentag filed frivolous documents and is using the power of this Court to shield him from an impending foreclosure. This Court cannot completely agree.

The mortgage which Mentag executed specifically identifies MERS as the mortgagee and specifically sets forth that MERS is acting solely as nominee for the

lender, GMAC Corp. Furthermore, the mortgage explicitly states that Mentag conveys the property to MERS (as nominee for Lender and Lender's successors and assigns) with the power of sale.

Michigan Compiled Laws Section 600.3201 provides that "[e]very mortgage of real estate, which contains a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement."

Michigan Compiled Laws Section 600.3204, the statute allowing for foreclosure by advertisement, provides:

> A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.
>
> (c) The mortgage containing the power of sale has been properly recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

Mich. Comp. Laws § 600.3204(1).

Therefore, since Mentag expressly gave the right to foreclose as nominee for GMAC Corp. to MERS, he cannot contend that MERS does not have standing to pursue relief from the stay to institute foreclosure proceedings, if GMAC Corp. has an interest in the mortgage and/or note. However, the record on that issue is not clear.

GMAC LLC filed its motion for relief as servicer for MERS. GMAC LLC represented that the Agreement was between it and MERS, and allowed it to pursue the motion to lift the stay. The face of the Agreement, however, indicates that it is between RAMP, GMAC Corp., and Chase. Thus, it appears that GMAC LLC's representations were not accurate. There is no evidence regarding the nature of the relationship between GMAC LLC and these parties.

The Agreement also says that RAMP intends to sell mortgage-backed pass-through certificates, "which in the aggregate evidence the entire beneficial ownership interest in the Mortgage Loans"; GMAC Corp. is defined as seller of the mortgage loans to RAMP. It is unclear whether Mentag's loan was included in this group of mortgage loans; the mortgage loan schedules—Exhibits E–1 thru E–5 of the Agreement—were not included in the record before the Bankruptcy Court. The record is also unclear as to what interest, if any, GMAC Corp. and MERS retained as lender and nominee mortgagee under Mentag's mortgage and note following transfer or sale. All of these discrepancies preclude a finding that GMAC LLC is the proper party in interest.

The Court acknowledges the right of lenders, holding valid mortgages, to receive timely payments, and in the case of default, to seek foreclosure on the property securing the notes. However, the Court finds that the Bankruptcy Court erred in finding, based on the record before it, that GMAC LLC was the proper party to bring the motion to lift the stay. *See In re Nosek,* 386 B.R. 374, 380 (Bankr. D.Mass.2008); *see also In re Foreclosure Cases,* 2007 WL 3232430 AT *3, 2007 U.S. Dist. LEXIS 84011 at *5 (N.D.Ohio 2007). The Court affirms the Bankruptcy Court's findings regarding the lack of equity and lack of adequate protection.

## VI. CONCLUSION

GMAC LLC's Motion to Dismiss Appeal and Mentag's Motion to Compel are **DE-NIED.** The Court **REVERSES** the Order Granting Relief from Automatic Stay and **REMANDS** this matter to the Bankruptcy Court for further findings of fact and conclusions of law consistent with this Opinion and Order. On remand, the Bankruptcy Court is to determine if MERS retained an interest in Mentag's mortgage, as nominee for GMAC Corp. or its successors or assigns, and whether GMAC LLC is the proper servicing agent with authority to pursue a foreclosure action. All foreclosure actions on Mentag's property must cease, pending further order of the Bankruptcy Court.

**IT IS ORDERED.**