NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0560n.06

No. 25-1120

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Dec 04, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| NABIL SALAMEY; SONIA SALAMEY, | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| HOUSSAM SALAMI, et al., | ) | |
| Defendants, | ) | |
| | ) | OPINION |
| CARTER-JONES COMPANIES, INC., d/b/a Carter Lumber, | ) | |
| Defendants-Appellees. | ) | |

Before: CLAY, KETHLEDGE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Nabil and Sonia Salamey engaged Houssam Salami to build a house for them. But, after a dispute over project funds, the Salameys sued Salami and other individuals and entities, including Carter Lumber, a lumber and materials supplier. The Salameys claimed that Carter Lumber aided in Salami's conversion of their property in violation of Michigan law and violated the Racketeer Influenced and Corrupt Organizations Act (RICO). The district court granted summary judgment to Carter Lumber on both claims. The Salameys now appeal. We AFFIRM.

I.

Nabil and Sonia Salamey hired Houssam Salami and his company, SS Designs, LLC, to build a house for them in Canton, Michigan. The parties didn't enter into a written contract but

instead operated pursuant to an oral understanding. Nabil Salamey opened an account at a credit union and authorized Salami to withdraw funds from the account to pay for construction costs.

Carter Lumber, a lumber and materials supplier, employed Salami as an outside sales representative. SS Designs, Salami's company, was also a customer of Carter Lumber and had a credit account with the lumber company that allowed it to purchase building materials on credit for its various projects. SS Designs had other projects with Carter Lumber in addition to the Salameys' home. Generally, when Salami made a payment to Carter Lumber, he indicated the project to which the payment should be applied. If he didn't, Carter Lumber would apply the payment to the oldest open invoice in SS Designs' credit account pursuant to company policy. As a result, some of the Salameys' funds were applied to invoices for projects unrelated to their home.

The Salameys sued Salami, Carter Lumber, and others in state court, but Carter Lumber removed the case to federal court. Pertinent to this appeal, the Salameys raised claims against Carter Lumber for aiding in conversion in violation of Michigan law and for violating RICO. Carter Lumber moved for summary judgment. The district court granted the motion.[1] The Salameys now appeal.

II.

We review de novo a district court's grant of summary judgment. *Naji v. City of Dearborn*, 120 F.4th 520, 523 (6th Cir. 2024). Summary judgment is appropriate where no genuine dispute

---

[1] Salami and SS Designs are not parties to this appeal. Below, they also moved for summary judgment. The district court granted summary judgment on the RICO claim against Salami and SS Designs. The court then declined to exercise supplemental jurisdiction over any state law claims raised by the Salameys against Salami and SS Designs and remanded those claims to state court. The Salameys appealed the district court's decision. But on October 30, 2025, the appeal was dismissed upon the parties' stipulation.

of material fact exists, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a).

*Conversion*. The district court didn't err by granting summary judgment to Carter Lumber on the Salameys' Michigan law claim for aiding in statutory conversion. Michigan's statutory conversion law allows a person to sue if damaged by "[a]nother person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted." Mich. Comp. Laws § 600.2919a(1)(b). Constructive knowledge that the property was stolen, embezzled, or converted is not enough. *Echelon Homes, L.L.C. v. Carter Lumber Co.*, 694 N.W.2d 544, 549 (Mich. 2005). Actual knowledge is required. *Id.*

Carter Lumber didn't have actual knowledge of the alleged conversion. Salami was authorized to withdraw funds from the credit union account established by the Salameys. The checks Carter Lumber received from the credit union account listed Salami as an owner/authorized signer. And there is no evidence in the record that Carter Lumber knew of any limitation on Salami's authority to make payments from the account.

For their part, the Salameys don't argue that Carter Lumber had direct knowledge of any conversion. They contend, however, that the company had institutional knowledge because its employee (Salami) knew of the conversion. But that argument fails because Salami was not a supervisor or manager at Carter Lumber, a prerequisite to imputing knowledge by an employee to his or her employer. *See Travis v. Dreis & Krump Mfg. Co.*, 551 N.W.2d 132, 173–74 (Mich. 1996) ("[P]laintiff may establish a corporate employer's actual knowledge by showing that a

supervisory or managerial employee had actual knowledge . . . ."). Without actual knowledge of the alleged conversion by Carter Lumber, the Salameys' Michigan law conversion claim fails.

*RICO.* The district court also didn't err by granting summary judgment to Carter Lumber on the Salameys' RICO claim. Pursuant to 18 U.S.C. § 1962(c), a "person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce" may not "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." So, to establish a RICO claim, the Salameys had to show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).

The district court concluded that the Salameys had failed to establish an "enterprise" because Carter Lumber could not simultaneously be both the RICO "enterprise" and liable under RICO as a "person." On appeal, the Salameys challenge this conclusion, arguing that Salami was the "distinct person who operated the enterprise." Appellants Br. at 34. We need not decide whether the Salameys have established an enterprise because, their RICO claim fails on a different ground—the failure to establish a pattern of racketeering activity. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 877 (6th Cir. 2020) (stating that this court may affirm for any reason supported by the record).

The Salameys must show "that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting 18 U.S.C. § 1961(5)). Carter Lumber argues both that there were no predicate acts and no pattern of racketeering. The Salameys respond to neither argument. Even assuming that the alleged

conversion of the Salameys' funds could constitute the predicate acts of bank, wire, or mail fraud under RICO, we agree with Carter Lumber that there was no pattern.

The pleading of at least two predicate acts is "necessary to sustain a RICO claim." *Moon*, 465 F.3d at 724. But even that "may not be sufficient because . . . there is something to a RICO pattern *beyond* the number of predicate acts involved." *Id.* (citation modified). "[T]he term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity. It is the factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (quoting *H.J., Inc. v. Nw. Bell Tele. Co.*, 492 U.S. 229, 238 (1989)). At most, the Salameys offer evidence of a single scheme involving Carter Lumber (misuse of the Salameys' funds from the credit union account) against a single victim (the Salameys). We have previously held that such schemes do not constitute a pattern. In *Moon*, for instance, we found that alleged predicate acts that occurred over a period of 30 months did not form a pattern of racketeering activity because all of the predicates "were keyed to [the defendants'] *single* objective of depriving [the plaintiff] of [certain healthcare] benefits." *Id.* at 725 (emphasis added). Because there were "[n]o other schemes, purposes, or injuries alleged" besides the time-limited one aimed at the plaintiff, there was no threat of continuity. *Id.*; *see also Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020) (The plaintiff's "complaint does not allege an actionable 'pattern of racketeering activity' because it pleads only a single scheme targeting a single victim."). In such cases, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Moon*, 465 F.3d at 725–26 (citation modified). Accordingly, without a pattern, the Salameys' RICO claim fails.

* * *

We AFFIRM.