Leon PERCIVAL, Plaintiff,

v.

Sandra GIRARD, and Prison Legal Services of Michigan, Defendants.

Case No. 08–CV–12374.

United States District Court, E.D. Michigan, Southern Division.

Feb. 26, 2010.

714

Leon Percival, Marquette, MI, pro se.

Sandra L. Girard, Jackson, MI, for Defendants.

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS, (2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (3) GRANTING DEFENDANTS' MOTION TO DISMISS AND (4) DENYING PLAINTIFF'S MOTION TO AMEND**

ROBERT H. CLELAND, District Judge.

Before the court is a motion to dismiss, filed by Defendants Sandra Girard and

Prison Legal Services of Michigan ("PLSM") on March 19, 2009. Magistrate Judge Michael Hluchaniuk issued a Report and Recommendation ("R & R"), recommending that this court grant Defendants' motion to dismiss and dismiss with prejudice Plaintiff Leon Percival's complaint. Plaintiff filed objections on January 11, 2010. For the reasons stated below, the court will overrule Plaintiff's objections, adopt the Magistrate Judge's R & R, grant Defendants' motion to dismiss, and deny Plaintiff's motion to amend.

## I. BACKGROUND

As originally filed, this case consisted of over thirty prisoners asserting a multitude of civil rights claims against various defendants. The court referred all pretrial matters to Magistrate Judge Hluchaniuk. (08/14/08 Order.) The Magistrate Judge efficiently and logically organized the claims, and on December 30, 2008, the court dismissed without prejudice all of the plaintiffs, except Plaintiff Percival, for misjoinder pursuant to Federal Rule of Civil Procedure 21. (12/30/08 Order.) On January 29, 2009, Percival filed an amended complaint. The court dismissed without prejudice all of the defendants named in the first amended complaint, except Defen-

dants Girard and PLSM, for misjoinder pursuant to Federal Rule of Civil Procedure 21. (2/11/09 Order.) The remaining Defendants, Girard and PLSM, filed a motion to dismiss on March 19, 2009, and Plaintiff filed a motion for leave to file a second amended complaint on April 3, 2009.[1]

Plaintiff sets forth the facts underlying his complaint in four sections: (1) "Introduction," (2) "The Bribe," (3) "Fraud and Predicate Acts," and (4) "Unlawful Tax Retaliation Scheme." (Pl.'s Second Am. Compl.) In the Introduction section, Plaintiff states that he was a class member of *Cain v. MDOC*[2] and that PLSM and its executive director, Girard, were appointed to represent him. (*Id.* ¶ 9, 10.) Plaintiff describes the *Cain* settlement agreements and alleges that "the MDOC enterprise and the PLSM enterprise engaged in a pattern and series of acts to block Plaintiff's efforts to seek judicial review of the circumvention of the settlement agreements and to punish Plaintiff for seeking redress and encouraging others to do the same." (*Id.* ¶ 20.)

In "The Bribe" section, Plaintiff states that "Defendants, while appointed to represent Plaintiff in the *Cain v. MDOC* case,

---

1. In addressing Plaintiff's second amended complaint, the Magistrate Judge stated:

 The primary difference between the first amended complaint and the second amended complaint is a paring down of the allegations relating to the previously dismissed defendants and the addition of one claim against the current defendants. Given the similarity between the allegations and the causes of action in first amended complaint and the second amended complaint, the undersigned will examine the claims set forth in the proposed second amended complaint under the futility standard, which essentially is the same standard as a motion to dismiss for failure to state a claim.

 (R & R at 728.) The court agrees with this assessment, and for clarity purposes, will also examine the claims set forth in Plaintiff's sec-

ond amended complaint. Whether addressing the first amended complaint under Federal Rule of Civil Procedure 12(b)(6) or the second amended complaint under the futility standard, the court's analysis and conclusion is the same.

2. *Cain v. MDOC* refers to:

 a class action lawsuit initiated by a group of prisoners in 1988 against the Department of Corrections. The *Cain* litigation was primarily concerned with prisoner personal property issues, but it also raised issues relating to prisoner classification and access to the courts. The *Cain* case spawned many interim orders during the fifteen years that it was pending.

 *King v. Zamiara*, No. 4:02–CV–141, 2009 WL 3424221, at *1 (W.D.Mich. Oct. 20, 2009).

began to bargain for a new contract for PLSM to represent prisoners in the same capacity it had for over twenty years with the MDOC." (*Id.* ¶ 23.) Plaintiff alleges that this new contract constitutes "the bribe," and that in exchange, Defendants "gave their assistance to the MDOC enterprise in reneging on the relief ordered in the settlement agreements, and took numerous actions to ensure that major violations thereof went unchallenged." (*Id.* ¶ 27.) Pursuant to this "bribe," Plaintiff alleges that "Defendants agreed to settle the case in exchange for a private settlement agreement governed by MCL 600.5531(F), and to settle the case for Policy Directives which have not force of law." (*Id.* ¶ 28.)

In the "Fraud and Predicate Acts" section, Plaintiff discusses the Michigan Supreme Court's "Order to Settle." (*Id.* ¶ 35.) He blames Defendants for this order, which stripped Plaintiff of his right to trial and to testify. (*Id.*) Plaintiff alleges that he brought to Defendant's attention the "MDOC enterprise's circumvention of the settlement agreements," but they did nothing. (*Id.* ¶ 39.) He further alleges that when he "inquired about the complaints being filed to seek contempt sanctions or to reinstate the case," Defendants falsely assured Plaintiff that the complaints had been processed. As result, Plaintiff asserts that he suffered the following injuries: (1) "the loss of $1700 worth of personal property," (2) "the loss of a protected property interest being the settlement's diminished value," and (3) "the loss of job assignment and wages of $144.00 per year from June 2004 to present." (*Id.* ¶ 45.)

Plaintiff sets forth the facts underlying his U.P.S. shipping claim in the "Property" subsection to the "Fraud and Predicate Acts" section. Plaintiff states that the "court ordered the MDOC pay for shipping of the confiscated property out of the institution" and that the "PLSM and MDOC enterprises arranged for U.P.S. to do the shipping." (*Id.* 57, 58.) Plaintiff asserts that the property was not delivered and that he filed grievances with both MDOC and PLSM. (*Id.* ¶ 60–62.) Plaintiff complains that PLSM stalled on this complaint and failed to officially raise this issue in the *Cain* litigation. (*Id.* ¶ 70.) Plaintiff then attempted to intervene in the *Cain* case, but the judge denied his motion. (*Id.* ¶ 63.) Plaintiff states that "PLSM took until about 30 days prior to the statute of limitations to suggest that U.P.S. was at fault and that Plaintiff should pursue U.P.S. in small claims court," even though Plaintiff insisted that MDOC was at fault. (*Id.* ¶ 64.) Plaintiff lost his claim against U.P.S. in small claims court and is now suing Defendants based on these events because he alleges "PLSM allowed MDOC to enter Plaintiff into a binding contract with U.P.S. without his knowledge or consent, and then caused Plaintiff to waive his right to appeal by filing a small claims case only to find out that PLSM contributed to the loss of $1700 worth of property, and the inability to recover from U.P.S." (*Id.* ¶ 69.)

Plaintiff also brings an action based on his transfer from a Level VI facility to a Level V facility, which is lesser security prison. (*Id.* ¶ ¶ 83–87.) Plaintiff alleges that he "wrote grievances and complaints to the MDOC and PLSM enterprises, and made it clear that the transfer was a *Cain* settlement violation," but that Defendants blocked his "effort to file a monitor complaint for arbitration or to reinstate the case, as a gratuity and offer to MDOC." (*Id.* ¶¶ 89, 91.) Based on this, Plaintiff alleges he was "stripped of a protected property interest being the diminished value of the settlement agreement, stripped of a protected property interest in raising *Cain* violations before the Court, and stripped of wages." (*Id.* ¶ 95.)

In the "Access to Courts and Mails" subsection of the "Fraud and Predicate Acts" section, Plaintiff notes that stamps were a significant issue in the *Cain* case, but to his detriment, were replaced by metered envelopes. (*Id.* ¶¶ 101, 102). This meant that "Plaintiff and the class were left without any way to determine the amount of postage for themselves prior to submitting mail." (*Id.* ¶ 103.) Plaintiff alleges that on October 16, 2007, an MDOC employee, who has been dismissed from this case, opened his mail claiming it had insufficient postage. (*Id.* ¶ 106.) Inside the envelope was a "check, summons, complaint, and correspondence inside, which dealt with many *Cain* issues and MDOC['s] failure to comply with Court orders." (*Id.* ¶ 108.) Plaintiff alleges that Gerth mailed the envelope to Defendants, who then ignored it. (*Id.* ¶ 110.) Plaintiff claims that "[b]ut for PLSM's failure to raise the issue regarding lack of ability to serve process in state court during the access to court phase of the *Cain* case[,] ... Plaintiff would have had a method to serve process and would have prevailed in convincing the court to provide a remedy therefor prior to closing the case." (*Id.* ¶ 116.)

In the final section, "Unlawful Tax Retaliation Scheme," Plaintiff alleges that Defendants are responsible for the 2008–2009 corrections appropriations bill, which imposes a 10% surcharge on items purchased by prisoners in state facilities. (*Id.* ¶¶ 119, 120.)

Based on these factual allegations, Plaintiff asserted fourteen causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); the First Amendment; United States Constitution Article I, §§ 9, 10; the Supremacy Clause; the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the Michigan

Constitution, and other state laws. (*Id.* at 26–31.)

## II. STANDARD

### A. Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans–Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir.2005); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir.2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1950.

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir.1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (abrogated on different grounds by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lillard,* 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. Metro-Health Med. Ctr.,* 58 F.3d 1130, 1138 (6th Cir.1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir.2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)).

If a proposed amended complaint would not survive a motion to dismiss, the amendment is futile and the court should not grant the motion to amend. *Thiokol Corp. v. Dep't Of Treasury, State of Mich., Revenue Div.,* 987 F.2d 376, 383 (6th Cir. 1993).

## B. Timely Objections and *De Novo* Review

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Wal-*

*ters,* 638 F.2d 947 (6th Cir.1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context. *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505, 508 (6th Cir.1991).

A party who files timely objections to a magistrate judge's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters,* 638 F.2d at 949–50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), noting that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 147, 106 S.Ct. 466 (footnote omitted).

Furthermore, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 837 (6th Cir.2006) (quoting

*Smith v. Detroit Fed'n of Teachers, Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987)).

## III. DISCUSSION

Plaintiff makes six objections to the Magistrate Judge's R & R. After reviewing each objection and the Magistrate Judge's findings and recommendations de novo, the court will overrule Plaintiff's objections and adopt the R & R.

### A. Objection One

Plaintiff argues that the Magistrate Judge's "background facts misstate the actual facts, and [the Magistrate Judge] mischaracterizes the claims Plaintiff is actually making." (Pl.'s Objs. at 1.) Specifically, Plaintiff alleges that his complaint is not based on the enforcement of the *Cain* settlement agreement and that the Magistrate Judge misconstrues his U.P.S. shipping-related claim. (*Id.* at 2.)

The court has reviewed Plaintiff's complaint and finds that the Magistrate Judge accurately described Plaintiff's claims and the facts underlying these claims. Plaintiff's complaint, as detailed in the Background section *supra,* is predominantly based on the *Cain* settlement agreement and its subsequent enforcement. For instance, the relief sought by Plaintiff includes "the loss of a protected property interest being the settlement's diminished value." (Pl.'s Second Am. Compl. ¶¶ 45, 95.) In addition, Plaintiff alleges that he "was stripped of a protected property interest in raising *Cain* violations before the Court," that Defendants blocked "Plaintiff's efforts to seek judicial review of the circumvention of the settlement agreements," that Defendants settled the *Cain* case in exchange for a bribe, and that his transfer to a lower security prison was a violation of the settlement agreement. (*Id.* ¶¶ 20, 27–28, 89, 95; *see also* R & R at 729.)

With respect to Plaintiff's U.P.S. shipping-related claim, the Magistrate Judge summarized the complaint as follows:

Paragraphs 54–82 are new and describe a process in 1998 where the *Cain* court allowed the MDOC to implement a new property policy. Under the new policy, prisoners had to send out property that was not allowed. To insure delivery, the court required the MDOC to ship via UPS. In this case, plaintiff asserts that UPS delivered his property to the wrong address and that he sued UPS and lost. He now claims that defendants Girard and PLSM are liable for the loss.

(R & R at 726.) Having reviewed paragraphs fifty four through eighty two of Plaintiff's complaint, the court agrees with the Magistrate Judge's summary.

In addition to agreeing with the Magistrate Judge's summary of these events, the court finds that Plaintiff's claim against Defendants based on the U.P.S. shipping rules is frivolous. *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999) ("[A] district court may, at any time, dismiss *sua sponte* a complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."). Any complaint with respect to the alleged improper U.P.S. delivery was properly directed against U.P.S., and Plaintiff brought this claim in small claims court and lost. He attempts to blame the MDOC for not disclosing all of the U.P.S. rules prior to Plaintiff's property being shipped, and then hold Defendants liable as well. He alleges that "PLSM allowed MDOC to enter Plaintiff into a binding contract with U.P.S. without his knowledge or consent, and then caused Plaintiff to waive his right to appeal by filing a small claims case only to find out that PLSM

contributed to the loss of $1700 worth of property, and the inability to recover from U.P.S." (Pl.'s Second Am. Compl. ¶ 69.) This claim is devoid of merit. Accordingly, the court will overrule Plaintiff's objection.

## B. Objection Two

In his second objection, Plaintiff argues that the *Rooker–Feldman* doctrine does not bar this court from exercising jurisdiction over his case, and instead *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), "applies because Plaintiff challenges third-party conduct, and not the settlement agreement." (Pl.'s Objs. at 3.)

█ The *Rooker–Feldman* doctrine originated in two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine holds that lower federal courts do not have jurisdiction to review challenges to state court decisions, because such reviews may only be had in the Supreme Court pursuant to 28 U.S.C. § 1257. *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002).

The Supreme Court reaffirmed and clarified the doctrine in *Exxon Mobil Corporation v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), holding that the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284, 125 S.Ct. 1517. The Supreme Court, however, also stated that even if "a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party,'" jurisdiction still exists. *Id.* at 293, 125 S.Ct. 1517 (quoting *GASH*

*Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir.1993)).

"In the wake of *Exxon*, [the Sixth Circuit] has tightened the scope of *Rooker–Feldman*." *Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 241 Fed.Appx. 285, 287 (6th Cir.2007) (citing *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir.2006) ("*Rooker–Feldman* is a doctrine with only limited application.")). The Sixth Circuit has interpreted *Exxon's* "limitation to mean that the *Rooker–Feldman* doctrine applies only when a plaintiff complains of injury from the state-court judgment itself." *Carter v. Burns*, 524 F.3d 796, 798 (6th Cir.2008). "The pertinent inquiry after *Exxon* is the 'source of the injury' the plaintiff alleges in the federal complaint." *In re Smith*, 349 Fed.Appx. 12, 14 (6th Cir.2009) (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)).

> If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of the injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick*, 451 F.3d at 393.

█ The court concludes that this case does not fall within "the narrow ground occupied by *Rooker–Feldman*." *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. 1517. Although Plaintiff's claims are premised on the *Cain* settlement agreements, the alleged source of Plaintiff's injuries derive from the actions of third parties, i.e., Defendants allegedly preventing Plaintiff from raising his claims that the MDOC was violating the *Cain* settlement agreements. *See McCormick*, 451 F.3d at 393. Plaintiff's complaint does not invite the district court to review and reject the state court judgment. *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. 1517. Moreover, the "*Rook-*

*er–Feldman* doctrine could not apply to parties that were not present in the state-court litigation." *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 463 n. 4 (6th Cir.2003) (citing *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995)). Defendants were involved in the *Cain* litigation in a representative capacity, but were not present as parties.

■ However, even though the *Rooker–Feldman* doctrine does not apply, the court finds that Plaintiff's claims based on *Lewis v. Casey* fail to state a claim upon which relief can be granted. In order to establish a denial of access to courts claim under *Lewis v. Casey*, a Plaintiff must "show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct." *Colvin v. Schaublin*, 113 Fed.Appx. 655, 657 (6th Cir.2004) (citing *Lewis*, 518 U.S. at 351, 116 S.Ct. 2174). The "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). "[T]he complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.*

■ Here, the underlying causes of action, which Plaintiff alleges have been lost by Defendant's actions, are frivolous and do not identify a remedy that could be awarded as recompense. *See id.*; *Lewis*, 518 U.S. at 353 n. 3, 116 S.Ct. 2174 ("Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Fed-

eral Rule of Civil Procedure 11 sanctions."). As stated above, the court finds that Plaintiff's claim based on the U.P.S. shipping rules is frivolous. In addition, Plaintiff was not denied access to the courts because he had an opportunity to litigate this claim in small claims court. With respect to Plaintiff's "transfer" claim, Plaintiff's transfer to a *lower*-level security prison cannot be construed as an adverse action, and Plaintiff identifies no portion of the *Cain* settlement agreement that entitles him to remain in a maximum security prison throughout his term of imprisonment.[3] Regarding his claim that Defendants ignored his complaint that was in the envelope opened by Gerth, Plaintiff merely alleges the complaint "dealt with many *Cain* issues and MDOC['s] failure to comply with Court orders." (Pl.'s Second Am. Compl. ¶ 108.) This bald assertion does not "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Christopher*, 536 U.S. at 417, 122 S.Ct. 2179.

Plaintiff contends that "Defendants did have a duty to litigate his complaints regardless of the outcome" (R & R at 725); however, Plaintiff is incorrect. Defendants, as officers of the court, had a professional obligation to not pursue frivolous matters. As the Supreme Court stated in *Polk Co. v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981),

Although a defense attorney has a duty to advance all colorable claims and defenses, the canons of professional ethics impose limits on permissible advocacy. It is the obligation of any lawyer-whether privately retained or publicly appoint-

---

3. As the Magistrate Judge stated, some of Plaintiff's theories have previously been determined to be without merit in *Coleman v. Granholm*, No. 06–12485, 2008 WL 919642 (E.D.Mich. Apr. 2, 2008) (Duggan, J.), where "Plaintiff Percival argue[d] that he was stripped of the protections provided in the 'Cain' settlement agreement when the MDOC abolished 'level vi' and placed him in administrative segregation." 2008 WL 919642, at *4.

ed-not to clog the courts with frivolous motions or appeals. [Plaintiff] has no legitimate complaint that his lawyer refused to do so.

454 U.S. at 323, 102 S.Ct. 445. Plaintiff fails to allege a nonfrivolous cause of action in which he was denied access to the courts. Accordingly, the court will overrule Plaintiff's objection.

### C. Objection Three

In the first section of Plaintiff's third objection, Plaintiff reiterates his *Rooker–Feldman* argument discussed above. Plaintiff then objects to the Magistrate Judge's determination that Plaintiff's claims are virtually all "repackaged and thinly disguised claims that defendants breached or conspired to breach the *Cain* settlement agreement" and that "a § 1983 claim is not the proper remedy to enforce a settlement agreement." (R & R at 729.) Plaintiff contends that he only seeks damages, and "[w]hile a § 1983 [claim] may be improper to 'enforce' a settlement agreement for injunctive relief obtained in a state case, it is indeed proper to award *damages* against third parties who violate property interests obtained thereby." (Pl.'s Objs. at 6 (emphasis in original).)

 The court agrees with the Magistrate Judge that virtually all of Plaintiff's claims are "repackaged and thinly disguised claims that defendants breached or conspired to breach the *Cain* settlement agreement." (R & R at 729.) Plaintiff's objection further supports this conclusion, in which he admits that the "property interests" that were "violated" were obtained from the settlement agreement. (Pl.'s Objs. at 6.) Indeed, Plaintiff alleges that he suffered "the loss of a protected property interest being the settlement's diminished value." (Pl.'s Second Am. Compl. ¶ 45.) As a mere contract dispute does not give rise to a § 1983 action, *see, e.g., Costello v. Fairfield*, 811 F.2d 782, 784

(2d Cir.1987), the court will overrule Plaintiff's objection.

### D. Objection Four

Plaintiff objects to the Magistrate Judge's recommendation that Plaintiff's RICO claims (Counts I, VI, VIII, XI, and XII) fail to state a claim. (Pl.'s Objs. at 7.) The Magistrate Judge determined that "Plaintiff fails to allege any predicate acts in his proposed second amended complaint that pose a risk of continued criminal activity." (R & R at 730.) In his objections, Plaintiff contends that continuity is demonstrated by Defendants adopting "a custom not to raise any complaints which will delay proceedings or result in any more lengthy battles with the administration." (Pl.'s Objs. at 8 (citing the First and Second Amended Complaints) (alteration omitted).)

 In order to prove a pattern of racketeering under RICO, "a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). " 'Continuity is both a closed—and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.' " *Id.* at 240, 109 S.Ct. 2893. Continuity over a closed period of time may demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* A "single, fraudulent scheme" to accomplish a single objective does not "possess the requisite RICO continuity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 726 (6th Cir.2006) (quoting *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134–35 (6th Cir. 1994)).

■ The court agrees with the Magistrate Judge's conclusion that "all of plaintiff's allegations are lacking because all of the alleged predicate acts 'were keyed to [the defendants'] single objective of depriving [the plaintiff] of' his rights under the settlement agreement." (R & R at 730 (quoting *Moon,* 465 F.3d at 725).) Plaintiff's objection supports this conclusion where he alleges a "custom" of Defendants suppressing his complaints. (Pl.'s Objs. at 8.) Moreover, the court finds that the facts alleged in Plaintiff's complaints and further set forth in his objections fail to adequately allege facts to establish predicate acts under RICO. Thus, the court will overrule Plaintiff's objection.

### E. Objection Five

In Plaintiff's fifth objection, he alleges that he sufficiently states a cause of action under § 1985, § 1986, and the First Amendment and he is entitled to summary judgment on these claims because Defendants failed to defend. Plaintiff, however, fails to identify specifically how the Magistrate Judge erred in addressing these claims. *See Zimmerman v. Cason,* 354 Fed.Appx. 228, 230 (6th Cir.2009) (requiring "specific objections to the magistrate's report"). As such, these objections do not provide the district court with the opportunity to "consider the specific contentions" of Plaintiff or "to correct any errors immediately." *Walters,* 638 F.2d at 951.

Moreover, the court agrees with the Magistrate Judge's analysis. The Magistrate Judge determined that Plaintiff's complaint fails to provide a sufficient factual basis that he was deprived of a constitutional right based on race or religious animus. (R & R 730–31.) Plaintiff merely states that he is black and a Muslim and that "Defendants justified suppressing his and over 400 other class members' claims, in part because 'the level vi subclass were a very small group of mostly radical Black Muslims who don't justify the expense."

(Pl.'s Objs. at 14.) This conclusory, unattributed allegation is insufficient to allege a conspiracy based on racial or religious animus. The court therefore agrees with the Magistrate Judge's conclusion.

Plaintiff argues that even if he "cannot prove the race or class-based animus behind Defendants impeding Plaintiff's access to state court, claims 3, 4, and 9 each alternatively state First Amendment Access to Courts claims." (*Id.*) As discussed under Objection Two, the underlying causes of action that Defendants allegedly blocked are frivolous and inadequately pleaded. *Christopher,* 536 U.S. at 415, 122 S.Ct. 2179. Thus, the court will overrule Plaintiff's objection.

### F. Objection Six

In Plaintiff's sixth objection, he objects to the Magistrate Judge's determination that Defendants were not state actors. (Pl.'s Objs. at 16.) The Magistrate Judge reasoned that "attorneys, even those appointed by the court, do not act under color of state law for purposes of claims asserted against them under 42 U.S.C. § 1983." (R & R at 731.) Plaintiff argues that "[p]eople and corporations who work in the prison or perform required services for prisoners act under color of state law even if they are private contractors and not State employees." (Pl.'s Objs. at 16 (citing cases where a physician under contract with the state, a chaplain, and a medical services provider were deemed state actors).)

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In *Polk Co.,* the Supreme Court held that "a public

defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." 454 U.S. at 325, 102 S.Ct. 445. It reasoned that "a defense lawyer characteristically opposes the designated representatives of the State" and "best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of his client.'" *Id.* at 318–19, 102 S.Ct. 445. The Court stated this was an "essentially private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Id.* at 319, 102 S.Ct. 445.

 The court agrees with the Magistrate Judge that Defendants are not state actors. The role of Defendants in relation to the state is similar to the role of the public defender because both characteristically oppose the representatives of the state. *See id.* at 318–19, 102 S.Ct. 445. Indeed, Defendants represented the prisoners in the *Cain* litigation who were suing the state, and it is likely that most of the civil rights complaints filed by the attorneys at PLSM were against the state. The prisoners have no constitutional right to attorneys in civil cases, *see Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987), and the state was not obligated to provide one for the prisoners to file civil suits against it. Thus, Defendants were filling an "essentially private function" and cannot be deemed state actors for purposes of § 1983. *Polk Co.*, 454 U.S. at 319, 102 S.Ct. 445. To the extent that Plaintiff alleges a conspiracy between Defendants and state actors, the court agrees with the Magistrate Judge that Plaintiff's allegations of a conspiracy are inadequate. Therefore, the court will overrule Plaintiff's objection.

1. Defendants Girard and PLSM previously filed a motion to dismiss. (Dkt. 138). This was held in abeyance pending action on the

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff's objections [Dkt. # 188] are OVERRULED and the Magistrate Judge's November 18, 2009 report and recommendation [Dkt. # 184] is ADOPTED, WITH THE EXCEPTION OF SECTION III.B, AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendants' "Second Motion to Dismiss" [Dkt. # 173] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's "Motion for Order to File Second Amended Complaint" [Dkt. # 175] is DENIED.

## REPORT AND RECOMMENDATION DEFENDANTS' SECOND MOTION TO DISMISS (Dkt. 173)

MICHAEL HLUCHANIUK, United States Magistrate Judge.

## I. PROCEDURAL HISTORY

This is a prisoner civil rights action filed under 42 U.S.C. § 1983, originally brought by multiple plaintiffs who are in the custody of the Michigan Department of Corrections (MDOC). (Dkt. 1). This matter was referred to the undersigned for all pretrial proceedings by District Judge Robert H. Cleland. (Dkt. 40). The undersigned recommended that certain claims be dismissed, that others be severed, and some claims be transferred. (Dkt. 122). Judge Cleland adopted that recommendation in part, and dismissed all plaintiffs except Leon Percival, who was permitted to file an amended complaint. (Dkt. 150, 154). Judge Cleland subsequently dismissed all defendants named in Percival's amended complaint except for defendants Sandra Girard and defendant Prison Legal Services of Michigan, Inc. (PLSM). (Dkt. 163).[1] These defendants filed a second

October 15, 2008 Report and Recommendation and was then terminated as moot by Judge Cleland's December 30, 2008 Opinion

motion to dismiss on March 19, 2009. (Dkt. 173). Percival filed a response on April 23, 2009. (Dkt. 179). Also in response to the second motion to dismiss, Percival filed a motion for leave to file a second amended complaint. (Dkt. 175). Defendants filed a response on May 7, 2009. (Dkt. 180). This motion will be disposed of via separate order, but its merits and defendants' futility arguments will be analyzed in this report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

## II. BACKGROUND FACTS AND PLAINTIFF'S COMPLAINTS

Plaintiff asserts claims against PLSM and its director, Sandra Girard, who represented the prisoners in the *Cain v. MDOC* state court class action suit. The *Cain v. MDOC* state court class action settlement involved MDOC policies pertaining to prisoners' access to the courts, personal property rights, and classification and placement of prisoners. *King v. Zamiara*, 150 Fed.Appx. 485, 487 n. 2 (6th Cir.2005). The 2003 MDOC Annual Report provides background information on the state court proceeding and settlement to which plaintiff refers in the amended complaint and the proposed second amended complaint in this case:

In April, 1988, seven male prisoners filed a class action lawsuit which was assigned to Judge James Giddings in the Ingham County Circuit Court. The case centered on the control of the type and amount of property inmates are permitted, prisoners' access to courts, and the prisoner classification system. In September, 1988, female prisoners were allowed to intervene, which resulted in additional issues. The case proceeded for the next eight years with the prisoners representing themselves and with no resolution of any of the actual claims in the case.

In August, 1996, the Michigan Supreme Court issued an order calling for swift resolution of the case and ordered the trial court to investigate the advisability of appointing special counsel to represent the class of male prisoners; Prison Legal Services of Michigan (PLSM) was appointed with an office located inside the prison. Judge Giddings then held trial in the *Cain* case from April through December of 1997 and ultimately issued orders which resolved the property claims. No other claims were resolved. When the Department converted the Egeler facility, where the PLSM office and prisoners were located, to the Reception Center, the Attorney General's Office filed a motion with the trial court asking that PLSM be required to vacate any office within the Department. This was denied by Judge Giddings and the Attorney General's Office appealed. On December 27, 2002 the Court of Appeals issued an opinion and order requiring PLSM to move out of the Egeler facility. The Court ruled resoundingly in the Department's favor and upheld their previous requirement that the PLSM office and all 12 of the workers could be removed from Egeler. Subsequent to this ruling, PLSM filed motions with the tri-

and Order. (Dkt. 144, 150). While the undersigned recommended that the claims against Girard and PLSM be dismissed on the merits, Judge Cleland did not address the merits of these issues in his opinion and order. Rather, he merely determined that plaintiffs' objections to the recommendation for dismissal was no longer properly before the Court because the only remaining plaintiff, Percival, was required to file an amended complaint. (Dkt. 150, p. 14).

al court, the appeals court, and the Supreme Court. On March 19, 2003 the Supreme Court ruled that Prison Legal Services of Michigan had to vacate their office within the Egeler facility and that the trial court had to ensure that the *Cain* case was brought to final Judgment by November 1, 2003.

Judge Giddings ordered the parties to negotiate with retired Judge Michael Harrison and after many months of negotiations, the parties approved a settlement. On November 6, 2003, the court entered four stipulations approving settlement agreements in the *Cain* case. The agreements covered access to courts, prisoner security classification, typewriters, and miscellaneous issues. This action ended the court's involvement in the 15–year–old case. The plaintiffs' counsel will continue to monitor compliance with the settlement until November of 2005 but the court's jurisdiction has ended.

*See* http://www.michigan.gov/documents/2003_Annual_Report_117583_7.pdf, pp. 22–23. With respect to the state court proceeding and settlement, the original plaintiffs in this case made three related different claims: (1) the settlement agreement was improper; (2) defendants Girard and PLSM wrongfully failed to do anything after November 2005, when the court-ordered monitoring of compliance by Girard and PLSM ended; and (3) defendants Girard and PLSM are engaged in a "conspiracy" with prison officials throughout the state regarding plaintiffs' legal mail and personal property claims. As noted above, the undersigned previously recommended the dismissal of these claims with prejudice based on the *Rooker–Feldman* doctrine.

According to defendants, the claims in plaintiff's proposed second amended complaint essentially parallel those in the first and are entirely futile. According to defendants, paragraphs 8–53 of the proposed second amended complaint describe the settlement in *Cain v. MDOC* and compare to paragraphs 18–63 in plaintiff's first amended complaint. Paragraphs 54–82 are new and describe a process in 1998 where the *Cain* court allowed the MDOC to implement a new property policy. Under the new policy, prisoners had to send out property that was not allowed. To insure delivery, the court required the MDOC to ship via UPS. In this case, plaintiff asserts that UPS delivered his property to the wrong address and that he sued UPS and lost. He now claims that defendants Girard and PLSM are liable for the loss.

According to defendants, ¶¶ 83–96 of plaintiff's proposed second amended complaint parallel ¶¶ 64–107 of his first amended complaint. He again claims that defendants did not enforce the *Cain* settlement, which plaintiff claims was violated when Michigan closed its only Level VI prison, the highest security level, and sent plaintiff to a Level V prison, a lower security level facility. Defendants further assert that ¶¶ 97–117 of plaintiff's proposed second amended complaint parallel ¶¶ 108–235 of his first amended complaint. Here, plaintiff claims that defendants Girard and PLSM did not forward mail after the *Cain* case and their representation of the class ended. Paragraphs 118–132 of plaintiff's second amended complaint parallel ¶¶ 236–257 of his first amended complaint, where plaintiff claims that defendants, who were never members of Michigan's legislative or executive branches, had something to do with the passage of part of the 2008–2009 Corrections appropriations bill, to which plaintiff objects.

## III. ANALYSIS AND CONCLUSIONS

### A. *Standard of Review*

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply

with Rule 8(a)(2), which requires " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629–30 (6th Cir.2009), citing, *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, 577 F.3d at 629–30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not " 'accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, quoting, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, 577 F.3d at 630.

Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D.Mich.2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

Where, as here, defendants have already answered the original complaint (Dkt. 183), plaintiff can amend only by leave of the Court. *See* Fed.R.Civ.P. 15. Rule 15(a) provides, however, that such "leave shall be freely given when justice so requires." In *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001), the court listed several factors to consider in order to decide whether to allow an amendment: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Here, defendants primarily argue that plaintiff's proposed amendments are futile. The Court need not grant leave to amend where the amendment would be "futile." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.

*Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir.2005), citing, *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.,* 632 F.2d 21, 23 (6th Cir.1980).

The primary difference between the first amended complaint and the second amended complaint is a paring down of the allegations relating to the previously dismissed defendants and the addition of one claim against the current defendants. Given the similarity between the allegations and the causes of action in first amended complaint and the second amended complaint, the undersigned will examine the claims set forth in the proposed second amended complaint under the futility standard, which essentially is the same standard as a motion to dismiss for failure to state a claim.

## B. *Rooker–Feldman*

Many of plaintiff's claims against Girard and PLSM are barred for the same reasons as previously suggested by the undersigned. To the extent that plaintiff seeks review of the state court proceedings in *Cain v. MDOC,* this Court does not have jurisdiction over his claims because they are barred by the *Rooker–Feldman*[2] doctrine. The *Rooker–Feldman* doctrine bars federal courts, other than the United States Supreme Court, from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Executive Arts Studio, Inc. v. City of Grand Rapids,* 391 F.3d 783, 793 (6th Cir.2004) (citations omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (The *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and rejection of those judgments."). In his third, fourth, fifth, and fourteenth causes of action, plaintiff essentially asks this Court to declare that the court-approved settlement agreement in *Cain v. MDOC* was improper and that defendants PLSM and Girard acted inappropriately in that case. This Court would necessarily become inappropriately "inextricably" entwined with that state court case. This is not permitted under *Rooker–Feldman* and the Court should dismiss the causes of action for want of jurisdiction.

Through his conspiracy claim, plaintiff seemingly attempts to tie his claims against PLSM and Girard to the actions of various corrections personnel (who are no longer defendants in this suit) as it pertains to legal mail, access to courts, and related personal property issues. The undersigned suggests that plaintiffs' conspiracy claim cannot be used to circumvent the *Rooker–Feldman* doctrine. As this Court held long ago, the "broad language of the Rules of Civil Procedure on joinder of claims and remedies, as well as parties, Rules 18 and 20, is limited by Rule 82 providing that the Rules of Civil Procedure shall not be construed to extend or limit the jurisdiction of the district courts or the venue of actions therein." *Square D Co. v. United Elec., Radio and Mach. Workers of America,* 123 F.Supp. 776, 782 (E.D.Mich. 1954); *see also U.S. ex rel. Fry v. Guidant Corp.,* 2006 WL 1102397 (M.D.Tenn.2006) (same). Thus, the undersigned suggests that plaintiff's conspiracy claims, as set forth in his third, fourth, fifth, and fourteenth causes of action, cannot save the proper dismissal of all claims brought

---

**2.** The *Rooker–Feldman* doctrine is named for *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of* *Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

against defendants PLSM and Girard for want of jurisdiction under the *Rooker–Feldman* doctrine.

### C. *Alleged Breaches of Cain Settlement Agreement.*

Virtually all of plaintiff's claims are repackaged and thinly disguised claims that defendants breached or conspired to breach the *Cain* settlement agreement. However, a § 1983 claim is not the proper remedy to enforce a settlement agreement. Courts have consistently ruled that a mere contract dispute does not give rise to a section 1983 cause of action because an ordinary breach of contract suit in state court is a sufficient post-deprivation remedy. *See e.g. Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196–97, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001) (holding that an ordinary breach of contract suit was enough process due to resolve a state's alleged failure to comply with contract terms that resulted in depriving plaintiffs of payments); *Costello v. Fairfield*, 811 F.2d 782, 784 (2d Cir.1987) (holding that the interpretation and subsequent resolution of a contract term through state court remedies did not constitute a denial of due process); *Sudeikis v. Chi. Transit Auth.*, 774 F.2d 766, 770 (7th Cir.1985) (holding that a city agency's alleged breach of a settlement agreement did not give rise to a viable section 1983 claim); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1989) (A § 1983 claim is not the proper remedy to enforce a settlement agreement.); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

Plaintiff's allegations and the relief requested in his proposed second amended complaint clearly show that his entire lawsuit is an attempt show that defendants violated the settlement agreement. In plaintiff's proposed second amended complaint, he asserts injuries to his "property interest" in the *Cain* settlement; that defendants conspired to obstruct the "due course of justice in state court proceedings"; that defendants obstructed his ability to prosecute his property claims by forcing plaintiff to enter into a contract with UPS under the settlement; that defendants prevented him from complaining that the court orders in *Cain* were not being followed; and defendants failed to "reasonably assert Plaintiff's rights in the *Cain v. MDOC* litigation resulting in injury to plaintiff." Indeed, plaintiff asserts that "Defendants' conduct amounts to malpractice and breach of contract, and gross negligence." (Dkt. 175, p. 35). The undersigned suggests that plaintiff's claims against defendants are merely claims for breach of the state court settlement agreement and thus, this Court has no jurisdiction over them.

### D. *RICO*

To the extent that the District Court concludes that plaintiff's claims are not entirely barred for the reasons set forth above, the undersigned further suggests that plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) as found in his first, sixth, eighth, eleventh, and twelfth causes of action of his proposed second amended complaint fail to state a claim. The undersigned suggests that allowing plaintiff to proceed under any RICO theory would be futile as he fails to state any RICO claim in his proposed second amended complaint. RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Crimes comprising "racketeering activity" are listed under 18 U.S.C. § 1961(1) and are commonly referred to as "predicate acts." The listed predicate acts include, among others: mail fraud (18 U.S.C.

§ 1341); wire fraud (18 U.S.C. § 1343); interference with commerce, robbery, or extortion (18 U.S.C. § 1951); tampering with a witness, victim, or an informant (18 U.S.C. § 1512), along with state law bribery and extortion, to the extent such crimes are punishable by imprisonment for more than one year.

The Supreme Court requires a RICO plaintiff do more than merely recite two predicate acts because "there is something to a RICO pattern beyond the number of predicate acts involved." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Rather, a plaintiff must show that "the predicate acts are related and that they constitute or pose a threat of continued criminal activity." *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893. It is this notion of "continuity plus relationship" that combines to produce a "pattern" under RICO. *Moon v. Harrison Piping Supply,* 465 F.3d 719, 724 (6th Cir.2006). Thus, merely pointing to two predicate acts is insufficient to meet the pattern requirement. A plaintiff must present evidence of "continuity," which "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. 2893. A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. 2893. However, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* In *Moon,* the Sixth Circuit held the plaintiff failed to state a RICO claim because he did not establish continuity. *Id.* at 719. The plaintiff's claim was based on allegations his employer colluded with an insurance provider and a physician to deny him workers compensation benefits. The court found that,

even though predicate acts occurring over a 30–month period may have constituted a "significant period of time," facts establishing a RICO pattern were still lacking because all of the alleged predicate acts "were keyed to [the defendants'] single objective of depriving [the plaintiff] of his benefits." *Id.* at 725. Where a single objective is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id.* at 725–26.

Even assuming that the predicate acts alleged by plaintiff satisfy RICO, plaintiff fails to allege any predicate acts in his proposed second amended complaint that pose a risk of continued criminal activity. Rather, he merely alleged that defendants committed acts targeted to injure plaintiff in a closed period of time. In addition, all of plaintiff's allegations are lacking because all of the alleged predicate acts "were keyed to [the defendants'] single objective of depriving [the plaintiff] of" his rights under the settlement agreement. *Id.* at 725. Where a single objective is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id.* at 725–26. Thus, the undersigned suggests that plaintiff's RICO claims as set forth in the first, sixth, eighth, eleventh, and twelfth causes of action of his proposed amended complaint are entirely futile in that they fail to state a claim on which relief may be granted.

E. *42 U.S.C. §§ 1985(2), 1985(3), and 1986*

 In plaintiff's third, fourth, and ninth causes of action of his proposed second amended complaint, he claims that he is the victim of a conspiracy to deny him his civil rights in violation of 42 U.S.C.

§§ 1985 and 1986. In order to establish a violation of § 1985(3), plaintiff would have to show (1) a conspiracy involving two or more people, (2) for the purpose of depriving, directly or indirectly a person or class of persons the equal protection of the law, (3) an act in furtherance of the conspiracy and (4) with a resulting injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. It must also be shown that the conspiracy was motivated by a class-based animus such as race. *Smith v. Thornburg,* 136 F.3d 1070, 1078 (6th Cir.1998). To state a claim under § 1985(2), a plaintiff must allege facts in his complaint supporting a claim of a conspiracy either (1) to influence parties, witnesses, or jurors in federal court proceedings; or (2) "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any state" motivated by racial or other class-based discriminatory animus. *McGhan v. Kalkaska Co. Dep't of Human Serv.,* 2009 WL 2170151, *14 (W.D.Mich.2009). Plaintiff's race and religious-based claims under § 1985 are found in his third and fourth causes of action. As discussed above, the undersigned suggests that these claims are barred by the *Rooker–Feldman* doctrine. This conclusion applies, regardless of the theory alleged, given that these causes of action are based on the allegations that defendants obstructed the "due course of justice in state court proceedings" and failed to enforce the classes' right to equal protection.

In addition, the undersigned suggests that plaintiff's allegations of a conspiracy to deprive him of his constitutional rights based on any racial and religious animus are insufficiently specific and do not state a claim. *Center for Bio–Ethical Reform, Inc. v. City of Springboro,* 477 F.3d 807, 832 (6th Cir.2007) ("conspiracy must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim."); *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir.1984) (Conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory.").

Plaintiff states that he is black and a Muslim, that Level VI security subclass in the class action lawsuit was made up of over "85% so-called minorities," that the PLSM "enterprise assisted [the director of the MDOC] in targeting Plaintiff based on his race and membership of the level vi subclass, and did disparately treat Plaintiff, and strip Plaintiff of court-ordered relief to save MDOC money in exchange for a new contract and financial relationship PLSM enjoyed for almost thirty years." (Dkt. 175, p. 12). Plaintiff further alleges that no whites were similarly targeted. *Id.* The undersigned suggests that, to the extent these claims are not barred by *Rooker–Feldman,* plaintiff has failed to provide a sufficient factual basis for these conspiracy-based claims, found in the third, fourth, and ninth causes of action in plaintiff's proposed second amended complaint, to go forward.[3]

### F. Conspiracy Under § 1983.

The undersigned also suggests that plaintiff's 1983 claims are barred because defendants are not state actors. Generally, attorneys, even those appointed by the court, do not act under color of state law for purposes of claims asserted against them under 42 U.S.C. § 1983. *Gray v.*

---

**3.** Section 1986 is merely a remedial provision for conspiracies properly alleged under § 1985. In the absence of a proper § 1985 claim, § 1986 provides no remedy. *See Amadasu v. Christ Hosp.,* 514 F.3d 504, 507 (6th Cir.2008).

*Rose,* 2009 WL 2132623, \*11 (S.D.Ohio 2009), citing, *Polk Co. v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). However, an otherwise private person acts "under color" of state law if that person conspires with state officials to deprive another of federal rights. *Gray,* at \*11, citing, *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Thus, to the extent that plaintiff's § 1983 claims are not grounded in a conspiracy based theory, they are barred as a matter of law because defendants are not state actors.

With respect to his conspiracy theories, plaintiff alleges that defendants conspired with MDOC officials (1) to deprive plaintiff of his right to speech, to access the courts, and to due process, (2) to deprive plaintiff of due process and to obstruct his ability to prosecute his valid property claims, and entered plaintiff into a contract with UPS without his consent, which contributed to the loss of $1700 in property; (3) to retaliate against plaintiff and deter him from pursuing his claims regarding the circumvention of court orders, contrary to the Fourteenth Amendment; and (4) to destroy plaintiff's summons, complaint, and check causing the dismissal of a state court claim. (Dkt. 175).

In this case, plaintiff's conspiracy theories are grounded in his allegations that these defendants, along with the MDOC, "engaged in a pattern and series of acts to block Plaintiff's efforts to seek judicial review of the circumvention of the settlement agreements and to punish Plaintiff for seeking redress and encouraging others to do the same." (Dkt. 174, p. 11). To the extent that plaintiff's conspiracy based § 1983 claims are not barred by the *Rooker–Feldman* doctrine or fall outside the scope of a breach of a settlement agreement, the undersigned suggests that they fail for the same reasons as plaintiff's other conspiracy claims set forth above. *Center for Bio–Ethical Reform,* 477 F.3d at 832 ("conspiracy must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim."); *Jaco,* 739 F.2d at 245 (Conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory."). Plaintiff's allegations are too vague and conclusory to survive a motion to dismiss and thus, they are entirely futile.[4]

### G. *State Law Claims*

To the extent that plaintiffs raise any other state law claims against defendants PLSM and Girard, including violations of the Michigan Constitution, malpractice, conversion, and negligence, the undersigned suggests that this Court decline to exercise supplemental jurisdiction over such state law claims given that all federal claims against these defendants will be dismissed. *See United Mine Workers v.*

---

4. Notably, some of plaintiff's § 1983 theories as alleged against MDOC personnel have been previously determined to be without merit. In *Coleman v. Granholm,* 2008 WL 919642, \*4 (E.D.Mich.2008), Percival, one of several prisoner-plaintiffs, argued "that he was stripped of the protections provided in the '*Cain*' settlement agreement when the MDOC abolished 'level vi' and placed him in administrative segregation." Percival also asserted that the "settlement agreement the MDOC entered into to resolve a class action lawsuit brought by inmates in 1986 gives him 'a state-created constitutionally protected right to possession and use of his tape player, cassettes, lawbooks, legal assistance agreements, meaningful in-cell activity, mental health evaluations, and access to typing room beyond 2 hrs.'" *Id.* The court concluded that Percival's due process claims and access to court claims failed as a matter of law. Likewise, any "conspiracy" that these defendants violated Percival's constitutional rights in this same manner fails as a matter of law.

*Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 521 (6th Cir.2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.